















KAJ    11/15/02    10:40

3:02-CV-01978   HANG V. ASHCROFT

*8*

*ANSHC.*

1  CAROL C. LAM
   United States Attorney
2  SAMUEL W. BETTWY
   Special Assistant U.S. Attorney
3  California State Bar No. 094918
   ROBERT H. PLAXICO
4  Assistant U. S. Attorney
   California State Bar No. 054953
5  Office of U.S. Attorney
   Federal Office Building
6  880 Front Street, Room 6293
   San Diego, California 92101-8893
7  Telephone:  (619) 557-7157

8  Attorneys for Respondents

9

10              UNITED STATES DISTRICT COURT

11             SOUTHERN DISTRICT OF CALIFORNIA

12  SOPHEA HANG,                )    Case No. 02cv1978-J(AJB)
                                )
13              Petitioner,     )
                                )
14        v.                    )
                                )
15  JOHN ASHCROFT, Attorney General )
    of the United States; IMMIGRATION )
16  NATURALIZATION SERVICE, et al.,  )
                                )
17              Respondents.    )
                                )
18  _____)

19

20              GOVERNMENT'S  RETURN

21

22

23

24

25

26

27

28  SWB/RHP:HANGgovreturn:2002V00719



FILED

02 NOV 14 PM 3: 38

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

ORIGINAL

TOPICAL INDEX

Page

TABLE OF AUTHORITIES      ii

I.    INTRODUCTION      1

II.   THE BASIC LAW UNDER <u>ZADVYDAS</u>      1

III.  INS HEADQUARTERS REVIEW IN THIS CASE SHOULD BE SUSTAINED      5

IV.   IF THE COURT ORDERS PETITIONER'S RELEASE,
      BOND SHOULD BE SET      8

CERTIFICATE OF SERVICE BY MAIL

02cv1978

TABLE OF AUTHORITIES

<u>CASES</u>                                                                                 <u>Page</u>

<u>Aguilera v. Kirkpatrick</u>,
    241 F.3d 1286 (10th Cir. 2001)                                              9

<u>Bahramizadeh v. INS</u>,
    717 F.2d 1170 (7th Cir. 1983)                                              10

<u>Donaldson v. United States</u>,
    653 F.2d 414 (9th Cir. 1981)                                               13

<u>Galvez-Maldonado v. Meese</u>,
    934 F.2d 991 (9th Cir. 1990)                                            9, 12

<u>Gete v. INS</u>,
    121 F.3d 1285 (9th Cir. 1997)                                               9

<u>Hermanowski v. Farquharson</u>,
    39 F. Supp. 2d 148 (D.R.I. 1999)                                           14

<u>In Re: Indefinite Detention Cases</u>,
    82 F. Supp. 2d 1098 (C.D. Cal. 2000)                                     8, 11

<u>Kahn v. INS</u>,
    2001 WL 1830081 *3 (S.D. Cal. 2001)                                  1, 6, 7-8

<u>Kim Ho Ma v. Janet Reno</u>,
    208 F.3d 815 (9th Cir. 2000)                                             2, 7

<u>Lujan-Armendariz v. INS</u>,
    222 F.3d 728 (9th Cir. 2000)                                               13

<u>NLRB v. Kolkka</u>,
    170 F.3d 937 (9th Cir. 1999)                                               13

<u>Nagahi v. INS</u>,
    219 F.3d 1166 (10th Cir. 2000)                                             10

<u>Narenji v. Civiletti</u>,
    617 F.2d 745 (D.C. Cir. 1979)                                        9, 11, 12

<u>Radzanower v. Touche Ross & Co.</u>,
    426 U.S. 148 (1976)                                                        13

<u>Reno v. Flores</u>,
    507 U.S. 292 (1993)                                                     9, 12

<u>Velasquez v. Reno</u>,
    37 F. Supp. 2d 663 (D.N.J. 1999)                                           14

ii

TABLE OF AUTHORITIES (Continued)

<u>CASES</u>                                                                 Page

<u>Vo v. Greene</u>,
        63 F. Supp. 2d 1278 (D. Colo. 1999)                          8, 11

<u>Yong v. INS</u>,
        208 F.3d 1116 (9th Cir. 2000)                                8, 11

<u>Zadvydas v. Davis</u>,
        121 S. Ct. 2491 (2001)                    1, 2, 3, 4, 5, 7, 8, 10, 14


        <u>STATUTES</u>
8 U.S.C. § 1103(a)                                                     9, 10

8 U.S.C. § 1103(a)(3)                                          9, 10, 11, 13

8 U.S.C. § 1182                                                            1

8 U.S.C. § 1182(g)                                                        14

8 U.S.C. § 1184(a)                                                 9, 10, 11

8 U.S.C. § 1226(a)                                                    12, 13

8 U.S.C. § 1226(a)(2)(A)                                                  14

8 U.S.C. § 1227(a)(1)(C)                                                   2

8 U.S.C. § 1227(a)(2)                                                      2

8 U.S.C. § 1227(a)(4)                                                      2

8 U.S.C. § 1231(a)(1)                                                      1

8 U.S.C. § 1231(a)(2)                                                      2

8 U.S.C. § 1231(a)(3)                                            1, 2, 5, 8, 13

8 U.S.C. § 1231(a)(6)                                           1, 2, 3, 7. 10

8 U.S.C. § 1231(b)                                                        15

8 U.S.C. § 1231(c)(2)(C)(i)                                               14

8 U.S.C. § 1252(a)(2)                                                     14

8 U.S.C. § 1252(a)(2)(B)                                                  14

8 U.S.C. § 1253                                                           11

TABLE OF AUTHORITIES (Continued)

STATUTES                                                        Page

8 U.S.C. § 2131(a)(6)                                              3

28 U.S.C. § 2241                                                  2

66 Fed. Reg. 38433                                               5

66 Fed. Reg. 56967                                               6

66 Fed. Reg. 56978                                               6


REGULATIONS

8 C.F.R. § 241.4                                                 6

8 C.F.R. § 241.4(a)                                             3

8 C.F.R. § 241.4(j)                                            10

8 C.F.R. § 241.5                                    5, 10, 11, 14

8 C.F.R. § 241.13                                              6

# I.  INTRODUCTION

Petitioner is of Cambodian nationality.  The facts pertinent to this proceeding are that Petitioner once had permanent residence status; was subsequently ordered removed as a result of criminal conviction; and his removal is final.[1/]  The final removal date was February 28, 2002, and he has been held in INS custody since March 19, 2001.  See Jason Ser Declaration, paras. 15-17.

At issue herein is the question of how long an alien under a final order of removal can be held in custody by the INS pending efforts to secure repatriation to the alien's country of origin.  In this case, it is clear that because of a recently consummated agreement between the United States and Cambodia, Petitioner cannot sustain a showing of "good reason to believe that there is no significant likelihood or removal in the reasonably foreseeable future, . . . ."  (Zadvydas v. Davis, 121 S. Ct. 2491, 2505 (2001)), or otherwise meet his "burden ... to show that there is no reasonable likelihood of repatriation."  Kahn v. INS, 2001 WL 1830081 *2 (S.D. Cal. 2001) (Keep. J.)

# II.  THE BASIC LAW UNDER ZADVYDAS

Ordinarily, an alien subject to a final order of removal must be removed within 90 days after the removal order becomes final.  8 U.S.C. §§ 1231(a)(1); 1231(a)(3).  However, under 8 U.S.C. § 1231(a)(6), aliens such as Petitioner, who are subject to removal for certain serious criminal offenses, can be held beyond the normal 90-day removal period.  That section provides:

> An alien ordered removed who is inadmissible under section
> 212 [8 U.S.C. § 1182], removable under sections

---

[1/]  See Exhibit 6, pp. 1, 5-6 to Jason Ser Declaration.

1  237(a)(1)(C), 237(a)(2), or 237(a)(4) [8 U.S.C.
   §§ 1227(a)(1)(C), (a)(2), or (a)(4)] or who has been
2  determined by the Attorney General to be a risk to the
   community or unlikely to comply with the order of removal,
3  may be detained beyond the removal period and, if released,
   shall be subject to the terms of supervision in paragraph
4  3 [8 U.S.C. § 1231(a)(3)].

5  In its <u>Ma</u> decision[2]/, the Ninth Circuit held that where a

6  repatriation agreement has not been concluded with the alien's home

7  country, an alien cannot be held more than 90 days after a final order

8  of removal, but that is where a repatriation agreement has been

9  concluded with the home country, Section 1231(a)(6) grants the

10 Attorney General the authority to detain a criminal alien for a

11 "reasonable time" beyond the 90-day period specified by

12 Section 1231(a)(6) in order to effectuate the alien's removal.   208

13 F.3d at 822.

14 <u>Ma</u> and a related Fifth Circuit case were reviewed by the Supreme

15 Court and the Court's resulting decision in <u>Zadvydas v. Davis</u>, No. 99-

16 7791, 121 S. Ct. 2491 (2001) has served to alter the circumstances

17 under which the INS can maintain custody of aliens subject to a final

18 removal order.[3]/

19 The Court first noted that "[a]fter entry of a final removal

20 order and during the 90-day removal period, however, aliens must be

21 held in custody. § 1231(a)(2)." 121 S. Ct. at 2495. After the 90-day

22 period, as the Court noted, Section 1231(a)(6) provides that the

23 ///

24 ///

25

26 [2]/ 208 F.3d 815, 818 (9th Cir. 2000).

27 [3]/ The Court held at the outset that 28 U.S.C. § 2241, the
   federal habeas corpus statute, provided jurisdiction upon federal
28 courts to hear challenges to post-removal detention. 121 S. Ct. at
   2497, 2498.

2                                        02cv1978

government "may" continue to detain an alien or release the alien under supervision.  Id.[4/]

The Government argued that Section 1231(a)(6) provided no limit on the time beyond the 90-day removal period that an alien falling into one of the Section 2131(a)(6) categories could be held.  This argument was rejected by the Court:

> In our view, the statute, read in light of the constitutional's demands, limits an alien's post-removal period detention to a period <u>reasonably necessary</u> to bring about that alien's removal from the United States.  It does not permit indefinite detention."  121 S. Ct. at 2498. Emphasis added.

> Consequently, interpreting the statute to avoid a serious constitutional threat, we conclude that, once removal is no longer <u>reasonably foreseeable</u>, continued detention is no longer authorized by statute.   121 S. Ct. at 2503. Emphasis added.

This basic holding was fleshed out in the remainder of the opinion.

"For the sake of uniform administration in the federal courts" (121 S. Ct. at 2505), the Court held that a six-month period of post-removal detention constitutes a "presumptively reasonable period of detention."  Id.  Moreover, release is not automatically mandated

---

[4/]   The Court noted that Section 1231(a)(6) applies:

> [T]o certain categories of aliens who have been ordered removed, namely inadmissible aliens, criminal aliens, aliens who have violated their nonimmigrant status conditions, and aliens removable for certain national security or foreign relations reasons, as well as any alien "who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal."  8 U.S.C. § 1231(a)(6) (1994 ed., Supp. V); see also 8 C. F. R. § 241.4(a) (2001).  It says that an alien who falls into one of these categories "may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision."  8 U.S.C. § 1231(a)(6) (1994 ed., Supp. V).

121 S. Ct. at 2498.

1  after the expiration of the six-month period.  "This six-month
2  presumption, of course, does not mean that every alien not removed
3  must be released after six months.  To the contrary, <u>an alien may be</u>
4  <u>held in confinement until it has been determined that there is no</u>
5  <u>significant likelihood of removal in the reasonably foreseeable</u>
6  <u>future</u>."  121 S. Ct. at 2505.  Emphasis added.

7      Procedurally, after the six-month period has expired, the Court
8  held that the INS can continue to detain an alien beyond six months
9  unless the alien establishes good reason to conclude there is no
10 significant likelihood of removal.  Once the alien makes such a
11 showing, the burden is on the Government to rebut this showing.

12      [O]nce the alien provides good reason to believe that there
       is no significant likelihood of removal in the reasonably
13     foreseeable future, the Government must respond with
       evidence sufficient to rebut that showing. And for
14     detention to remain reasonable, as the period of prior
       post-removal confinement grows, what counts as the
15     "reasonably foreseeable future" conversely would have to
       shrink.[5/]
16

17 121 S. Ct. at 2505.

18      Thus, until an alien held in post-removal detention meets the
19 burden of showing that there is "no significant likelihood of removal
20 in the reasonably foreseeable future," (121 S. Ct. at 2505) the
21 detention is presumptively reasonable and may continue.  Only if the
22 prospect of removal is not likely reasonable in the foreseeable future
23
24
25

26      [5/]   The mere absence of an extant or pending repatriation
       agreement does not establish that there is no significant likelihood
27     of removal in the reasonably foreseeable future, the Court held. 121
       S. Ct. at 2505.  Rather, in such circumstances, a district court must
28     give "due weight to the likelihood of successful future
       negotiations.."  <u>Id.</u>

1  should a court hold continued detention unreasonable and no longer

2  authorized by statute.  121 S. Ct. at 2504.[6/]

3  "Ordinary principles of judicial review in this area recognize

4  primary Executive Branch responsibility."  121 S. Ct. at 2504.

5  Accordingly, in reviewing a determination by the Attorney General that

6  there is a significant likelihood of removal in the reasonable

7  foreseeable future, a district court "must take appropriate account

8  of the greater immigration-related expertise of the Executive Branch,

9  of the serious administrative needs and concerns inherent in the

10  necessarily extensive INS efforts to enforce this complex statute, and

11  the Nation's need to 'speak with one voice' in immigration matters."

12  121 S. Ct. at 2504.

13  III.  INS HEADQUARTERS REVIEW IN THIS CASE SHOULD BE SUSTAINED

14

15  Following the Zadvydas decision, on July 19, 2001, the U. S.

16  Department of Justice issued a Notice of Memorandum, which was

17  published in the Federal Register on July 24, 2001, that provides for

18  detailed procedures for Respondent INS to follow in cases like this

19  one where a person has been in removal detention for a certain period.

20  See 66 Fed. Reg. 38433, 2001 WL 825919 (July 24, 2001).  Under these

21  new procedures, if an alien is still in INS custody six months after

22

23  _6/_  A release ordered by a court, moreover, is not unconditional:

24  [T]he alien's release may and should be conditioned on any
    of the various forms of supervised release that are

25  appropriate in the circumstances, and the alien may no
    doubt be returned to custody upon a violation of those

26  conditions.  See supra, at 14 (citing 8 U.S.C.
    §§ 1231(a)(3), 1253 (1994 ed., Supp. V); 8 C.F.R. § 241.5

27  (2001)).

28  121 S. Ct. at 2504.

1   entry of the final removal order, and the alien provides good reason

2   to believe that there is no significant likelihood of removal in the

3   reasonably foreseeable future, the issue of likelihood of removal is

4   referred to INS Headquarters for its determination. The INS

5   Headquarters determination is based on the broader experience of the

6   INS and the Department of State with the designated country of

7   removal.[7] As Judge Keep has observed, "[t]he HQPDU is a specialized

8   unit within the INS constituted to do just these determinations, and

9   such administrative expertise, particularly in the context of

10  immigration, deserves significant deference from the judiciary." <u>Kahn</u>

11  <u>v. INS</u>, 2001 WL 1830081 *3 (S.D. Cal. 2001).

12      Upon the receipt of a substantiated claim, the INS will analyze

13  the likelihood of removal under the circumstances and information

14  available. Unless and until the INS determines that there is not a

15  significant likelihood of removal in the reasonably foreseeable

16  future, the alien will continue to be detained, and his detention will

17  continue to be governed by the existing post-order detention

18  standards.[8]

19

20

---

21      [7]  On November 14, 2001, the INS published its interim rule
22  amending 8 C.F.R. § 241.4 and adding 8 C.F.R. § 241.13. <u>See</u> 66 Fed.
    Reg. 56967 et. seq. (November 14, 2001). The interim rule, effective
23  November 14, 2001, modifies and adds structure to the Attorney
    General's July 19, 2001 interim procedures. Most notably, section
24  241.13 eliminated the thirty-day self-imposed limit to complete a
    "likelihood of repatriation of review."

25      [8]  Moreover, in making determinations about the likelihood of
26  removing an alien, the INS will consider its historical record of
    repatriation to the country designated for the particular alien,
27  solicit input from the Department of State in certain cases, and
    permit the alien an opportunity to show why his case may differ from
28  the cases of other aliens whose removal is sought to the same country.
    66 Fed. Reg. 56978.

1    In this case, a Headquarters Review of Petitioner's circumstances
2    has been held and a Decision To Continue Detention has been made.
3    See Exhibit 4.   The INS concluded that it was likely that Petitoner
4    could be repatriated because Cambodian nations have begun to be
5    repatriated in recent months:

6        Removals of Cambodian citizens have resumed with increasing
         frequency.   There is a strong possibility that a travel
7        document will be available for your removal in the
         reasonably forseeable future.   Your criminal record is
8        violent in nature and thee is nothing in your file that
         shows that you would remain non-violent and not pose a
9        threat to the community.

10   Exhibit 4.

11   This conclusion arose from a recent arrangements consummated with
12   between the United States and Cambodian.   The original Ma case, also
13   involving a Cambodian national, arose in the context of circumstances
14   in which no repatriation agreement existed between the United States
15   and Cambodia.   On March 22, 2002, however, the United States and
16   Cambodia signed a memorandum of understanding providing for
17   repatriation of Cambodian nationals subject to final removal orders.
18   Ex. 1.   Petitioner avers that a request for a travel document from
19   Cambodia "has gone unanswered."   Petition at 2.   Subsequently,
20   however, Petitioner Hang was interviewed by a member of the Cambodia
21   consulate in early October, along with many other Cambodian nationals
22   subject to removal.   Ex. 1.   Moreover, since the signing of the
23   agreement, a number of Cambodian nationals recently have been removed
24   to Cambodia, including the Mr. Ma whose case generated the Zadvydas
25   decision.   Ex. 2.   It is thus clear that a process of repatriation has
26   been established for Cambodian nationals.   As other courts in this
27   district have observed, such evidence is probative of the fact that
28   there are no institutional barriers to repatriation.   See, Khan,

1   supra, 2001 WL 1830081 *3; Gebremariam v. Ashcroft, Case No. 02-

2   cv0214H(AJB) (S.C. Cal. July 9, 2002) (attached as Ex. 3).

3       Based on this evidence, it is clear that Petitioner is not

4   subject to release under the standards enunciated in Zadvydas, and the

5   INS's decison in this regard should be upheld.

6           IV.   IF THE COURT ORDERS PETITIONER'S RELEASE, BOND
                  SHOULD BE SET
7

8       If the Court were to grant the Petition and order release, it

9   should specify that the INS may prescribe any conditions of release

10  and terms of supervision that are appropriate in the circumstances.

11  Whether the INS will set a bond requirement in Petitioner's case

12  remains to be seen, but it is clear, following the Zadvydas decision,

13  that bond is a permissible condition of release.[9/]

14

15      [9/]    Prior to the Zadvydas decision, a split among the courts
    existed as to whether a bond requirement was permissible.   The INS'
16  authority to set bond was recognized in In Re:  Indefinite Detention
    Cases, 82 F. Supp. 2d 1098, 1101-02 (C.D. Cal. 2000) ("This is not to
17  say that the release should be unconditional . . . A released alien
    could be required to . . . post[s] a cash or property bond"), cited
18  on other grounds in, Yong v. INS, 208 F.3d 1116, 1121 (9th Cir. 2000);
    Safarian v. INS, No. 00cv0926-K (S.D. Cal. Aug. 3, 2000) ("the court
19  finds that, consistent with the Ninth Circuit's decision in Ma, the
    INS has authority to set bond as a condition of release under
20  § 1231(a)(3)"); Nguyen v. INS, 00cv1532-J (S.D. Cal. Jun. 19, 2000)
    ("the INS has authority to set bond as a condition of release").  See
21  also Vo v. Greene, 63 F. Supp. 2d 1278, 1287 (D. Colo. 1999)
    ("petitioners are entitled to habeas relief under the circumstances
22  of these cases, subject to reasonable bond terms").  Most recently,
    Judge Keep held that bond is a permissible condition of release:
23
            In Ma, the Ninth Circuit explicitly noted: "All aliens
24          ordered released must comply with the stringent supervision
            requirements set out in 8 U.S.C. § 1231(a)(3).  . . .  In
25          addition, other courts have explicitly contemplated a
            requirement of bond as a condition of release.
26
    Saadati v. U.S., Case No. 01cv0355-K (S.D. Cal. April 30, 2001) at 4.
27  By contrast, INS authority to impose a bond requirement in appropriate
    cases was rejected in Sisalo v. INS, Case No. 00cv0356-IEG(CGA) (S.D.
28  Cal. Oct. 11, 2000); Wong v. INS, Case No. 00cv1878-J(RBB) (S.D. Cal.
                                                    (continued...)

1   The Attorney General's general bond authority is set forth at 8

2   U.S.C. § 1103(a)(3):

3   **POWERS AND DUTIES OF THE ATTORNEY GENERAL AND THE COMMISSIONER**

4   (a) ATTORNEY GENERAL

5       (1)  The Attorney General shall be charged with the
    administration and enforcement of this Act and all other
6   laws relating to the immigration and naturalization of
    aliens, . . .
7

8       . . . .

9       (3)  He shall establish such regulations; prescribe
    such forms of bond, reports, entries, and other papers;
    issue such instructions; and perform such other acts as he
10  deems necessary for carrying our his authority under the
    provisions of this Act.
11

12      . . . .

13      (5)  He shall have the power and duty to control and
    safeguard the boundaries and borders of the United States
    against the illegal entry of aliens . . .
14

15  See Gete v. INS, 121 F.3d 1285, 1300 (9th Cir. 1997) (the Attorney

16  General's vehicle seizure regulations were promulgated pursuant to

17  broad authority in 8 U.S.C. § 1103(a)(3)); Narenji v. Civiletti, 617

18  F.2d 745, 747 (D.C. Cir. 1979) (in light of the broad mandate of

19  section 1103(a), "[t]he statute [8 U.S.C. § 1184(a)] need not

20  specifically authorize each and every action taken by the Attorney

21  General, so long as his action is reasonably related to the duties

22  imposed upon him."), quoted in Flores by Galvez-Maldonado v. Meese,

23  934 F.2d 991, 999 (9th Cir. 1990), rev'd on other grounds sub nom.

24  Reno v. Flores, 507 U.S. 292 (1993).   See also Aquilera v.

25  Kirkpatrick, 241 F.3d 1286, 1292 (10th Cir. 2001) ("Congress has

26

27      9/  (...continued)
    Dec. 14, 2000); Aphayavong v. INS, Case No. 00cv0804-J(LAB) (S.D. Cal.
28  Dec 14, 2000); Rithy v. INS, Case No. 00cv0789-IEG(CGA) (S.D. Cal.
    Oct. 16, 2000).

explicitly delegated much of its power over immigration to the Attorney General") (citing 8 U.S.C. § 1103(a)(3)); <u>Nagahi v. INS</u>, 219 F.3d 1166, 1170 (10th Cir. 2000) ("The obvious scope of this grant is limited to acts which allow the Attorney General to carry out her authority"); <u>Bahramizadeh v. INS</u>, 717 F.2d 1170, 1172 (7th Cir. 1983) ("By authority of 8 U.S.C. §§ 1103(a) and 1184(a), the Attorney General has promulgated regulations providing for the forfeiture of maintenance of status and departure bonds posted by aliens as a condition of admission to this country.").

Pursuant to section 1103(a)(3), the Attorney General has promulgated a regulation that assists him in carrying out his responsibility under section 1231(a)(6)[10/] to release aliens like Petitioner under statutorily specified terms of supervision:

**§ 241.5 Conditions of release after removal period.**

(a) [Order of supervision]

(b) *Posting of bond*. An officer authorized to issue an order of supervision may require the posting of a bond in an amount determined by the officer to be sufficient to ensure compliance with the conditions of the order, including surrender for removal.

8 C.F.R. § 241.5 (emphasis added).   <u>See also</u> 8 C.F.R. § 241.4(j) (conditions of release).

In <u>Zadvydas</u>, the Supreme Court ruled that, even when continued detention would be unauthorized, the Attorney General can set

---

[10/]   (6) INADMISSIBLE OR CRIMINAL ALIENS.--An alien ordered removed who is inadmissible under section 212, removable under section 237(a)(1)(C), 237(a)(2), or 237(a)(4), or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, <u>may be detained</u> beyond the removal period <u>and, if released</u>, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6) (emphasis added).

1 conditions of release.   In support of its ruling, the Court twice

2 specifically cited 8 C.F.R. § 241.5, Id. at 2504, 2502, noting that

3 the regulation "establish[es] conditions of release after [the]

4 removal period." Id. at 2502 (emphasis added).[11/]   See also In Re:

5 Indefinite Detention Cases, 82 F. Supp. 2d 1098, 1101-02 (C.D. Cal.

6 2000) ("This is not to say that the release should be unconditional

7 . . . A released alien could be required to . . . post[s] a cash or

8 property bond"), cited on other grounds in, Yong v. INS, 208 F.3d

9 1116, 1121 (9th Cir. 2000); Vo v. Greene, 63 F. Supp. 2d 1278, 1287

10 (D. Colo. 1999) ("petitioners are entitled to habeas relief under the

11 circumstances of these cases, subject to reasonable bond terms").

12 It is anticipated that Petitioner will argue that the Attorney

13 General's bond authority cannot be derived from Congress' mandate in

14 section 1231(a) that he include certain "terms of supervision" in his

15 regulations.   Such a statement would be correct since the Attorney

16 General's bond authority derives from section 1103(a)(3), and

17 Congress' mandate in section 1231(a)(3) bears no relation to the

18 Attorney General's existing authority in all other regards, including

19 his authority to set conditions of release and/or to set additional

20 terms of supervision.   As explained further below, the fact that the

21 Attorney General's bond authority is not mentioned in section 1231(a)

22 is meaningless.   See Narenji v. Civiletti, 617 F.2d at 747 (in light

23 of the broad scope of section 1103(a), "[t]he statute [8 U.S.C.

24 § 1184(a)] need not specifically authorize each and every action taken

25

26    [11/]   The Court also cited 8 U.S.C. §§ 1231(a)(3) and 1253.
27 Section 1231(a)(3) sets forth mandated terms of supervision, and
   section 1253 establishes criminal penalties for failure to cooperate
28 with the Attorney General's removal efforts, including willful failure
   or refusal to report for removal.

11                                                    02cv1978

1  by the Attorney General, so long as his action is reasonably related

2  to the duties imposed upon him").[12]

3      Petitioner is also expected to argue that, applying the canon of

4  "negative implication," since Congress mentions the Attorney General's

5  bond authority in another statute, 8 U.S.C. § 1226(a), but does not

6  mention it in section 1231(a), Congress must have intended to limit

7  (or not confer) the Attorney General's bond authority in section

8  1231(a).   Such an argument must be rejected because (1) the bond

9  authority is expressly conferred by section 1103(a)(3); (2) section

10  1231(a) "need not specifically authorize each and every action taken

11  by the Attorney General, so long as his action is reasonably related

12  to the duties imposed upon him," <u>Narenji v. Civiletti</u>, 617 F.2d 745

13  at 747; (3) repeals by implication are heavily disfavored; and

14  (4) bond is mentioned in other provisions of the Act only to establish

15  a minimum amount that the Attorney General can set, not to confer an

16  authority which already exists.

17      The Supreme Court has set forth the rule whereby a statute can

18  be repealed or superseded by implication:

> It is, of course, a cardinal principle of statutory
> construction that repeals by implication are not favored.
> [citations omitted]   There are, however, two well-settled
> categories of repeals by implication (1) where provisions
> in the two acts are in irreconcilable conflict, the later
> act to the extent of the conflict constitutes an implied
> repeal of the earlier one; and (2) if the later act covers
> the whole subject of the earlier one and is clearly
> intended as a substitute, it will operate similarly as a
> repeal of the earlier act. But, in either case, the
> intention of the legislature to repeal must be clear and
> manifest.

---

[12]    Quoted in <u>Flores by Galvez-Maldonado v. Meese</u>, 934 F.2d 991,
999 (9th Cir. 1990), <u>rev'd on other grounds sub nom.</u>, <u>Reno v. Flores</u>,
507 U.S. 292 (1993). .

1  <u>Radzanower v. Touche Ross & Co.</u>, 426 U.S. 148, 154 (1976), <u>cited in</u>,

2  <u>Lujan-Armendariz v. INS</u>, 222 F.3d 728, 743 (9th Cir. 2000).

3      According to this Court:

4      There must be a "repugnancy" between the words or purposes
       of the two statutes. <u>Donaldson v. United States</u>, 653 F.2d
5      414, 418 (9th Cir. 1981). If the statutes are capable of
       coexistence, it is the duty of the courts to regard each as
6      effective. <u>Id.</u> Put another way, even when two statutes
       are in some conflict, "[r]epeal is to be regarded as
7      implied only if necessary to make the [later-enacted law]
       work, and even then, only to the minimum extent necessary."
8      <u>NLRB v. Kolkka</u>, 170 F.3d 937, 941 (9th Cir. 1999).

9  <u>Lujan-Armendariz v. INS</u>, 222 F.3d at 744.

10     There is no language or purpose in section 1231(a) that conflicts

11 with the Attorney General's general bond authority in section

12 1103(a)(3). The fact that Congress has mandated certain terms of

13 supervision in section 1231(a)(3) is not inconsistent with the

14 Attorney General's authority to set conditions of release, including

15 a bond requirement. Conditions of release apply before the alien is

16 released; terms of supervision apply after the alien is released.

17 Terms of supervision assist the INS in keeping track of an alien

18 pending efforts to obtain repatriation documents from the alien's home

19 country. Bond assures that the alien complies with the terms of

20 supervision. Additionally, bond assures that the alien will

21 ultimately report for removal once arrangements have been made for

22 repatriation.

23     At any rate, it would not be reasonable to argue that Congress

24 is attempting to confer bond authority in conjunction with release

25 authority in section 1226(a). In that section, Congress limits the

26 Attorney General's bond authority by requiring that the bond be "at

27

28

least $1500." 8 U.S.C. § 1226(a)(2)(A). <u>See also</u> 8 U.S.C. § 1231(c)(2)(C)(i) ("at least $500").[13]/

There is at least one analogous situation in which Congress has conferred release authority to the Attorney General without specifying his bond authority. In 8 U.S.C. § 1252(a)(2) (1995), Congress gave the Attorney General limited authority to release aggravated felons, but did not mention any concomitant bond authority (because it did not need to). At least two district courts acknowledged the Attorney General's authority to set bond as a condition of release under that section. <u>Hermanowski v. Farquharson</u>, 39 F. Supp. 2d 148, 151 (D.R.I. 1999) (noting Attorney General's bond authority under 8 U.S.C. § 1252(a)(2)(B)); <u>Velasquez v. Reno</u>, 37 F. Supp.2d 663, 666 (D.N.J. 1999) (same).

Finally, it is expected that Petitioner will argue that requiring bond as a condition of release is unconstitutional because the Attorney General no longer has any authority to detain them. However, the Attorney General still has authority to detain Petitioner because he is still under a final order of removal. In <u>Zadvydas</u>, the Supreme Court specifically stated that the Attorney General retains the authority to set "conditions of release" and specifically cited 8 C.F.R. § 241.5. <u>Zadvydas</u>, 121 S. Ct. at 2502, 2504. The Supreme Court also specifically states that the Attorney General retains the authority to take aliens like Petitioner back into custody if he fails to comply with the terms of supervision. <u>Id.</u>, 121 S. Ct. at 2504 ("of

---

[13]/ It might be noted that there are other sections of the INA where the Attorney General's bond authority is mentioned, but not in the context of his detention or release authority. <u>See, e.g.</u>, 8 U.S.C. §§ 1182(g) (authority to admit otherwise inadmissible aliens), 1183 (same).

1   course, the alien's release may and should be conditioned on the

2   various forms of supervised release that are appropriate in the

3   circumstances, and the alien may no doubt be returned to custody upon

4   a violation of those conditions").

5       Furthermore, the Attorney General must necessarily take

6   Petitioner back into custody to effect his removal.  <u>See</u> 8 U.S.C. §

7   1231(b).  Such a constitutional argument should be rejected because

8   it is based upon the incorrect premise that the Attorney General no

9   longer has authority to detain Petitioner.

10      DATED: November 14, 2002      CAROL C. LAM
                                        United States Attorney

11

12

13                                      SAMUEL W. BETTWY
                                        Special Assistant U.S. Attorney

14

15                                      ROBERT H. PLAXICO
                                        Assistant U.S. Attorney

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

SOPHEA HANG,                                    )        Case No.  02cv1978-J(AJB)
                                                )
                Plaintiff,                      )
                                                )
        v.                                      )        CERTIFICATE OF SERVICE
                                                )        BY MAIL
JOHN D. ASHCROFT, Attorney General              )
of the United States ADELE J. FASANO,           )
District Director,  U.S. IMMIGRATION &          )
NATURALIZATION SERVICE,                         )
                                                )
                Defendants.                     )
                                                )
_____)
STATE OF CALIFORNIA                             )
                                                )  ss.
COUNTY OF SAN DIEGO                             )

        IT IS HEREBY CERTIFIED that:

        I, Cynthia A. Melin-Schwartz, am a citizen of the United States over the age of eighteen
years and a resident of San Diego County, California; my business address is 880 Front Street, San
Diego, California; I am not a party to the above-entitled action; and

        On  **November 14, 2002**  I deposited in the United States Mail at San Diego, California,
in the above-entitled action, in an envelope bearing the requisite postage,  a copy of the following:

                               **Government's Return**
addressed to the attorney of  record,

**Jason I. Ser, Esq.**                                          **Sophea Hang, Pro Se**
**Federal Defenders of San Diego**                              **A# 27-747-367**
**225 Broadway, Suite 900**                       **San Diego, Detention Center (CCA)**
**San Diego, CA  92101**                                        **P. O. Box  439049**
                                                       **San Ysidro, CA  92143-9043**

the last known address at which place there is delivery service of mail from the United States Postal
Service.  I declare under penalty of perjury that the foregoing is true and correct.

        Executed on this **14th** Day of  **November  2002**.

                                    CYNTHIA A. MELIN-SCHWARTZ

EXHIBIT 1

CAROL C. LAM
United States Attorney
SAMUEL W. BETTWY
Special Assistant U.S. Attorney
California State Bar No. 94918
ROBERT H. PLAXICO
Assistant U.S. Attorney
California State Bar No.54953
Office of U.S. Attorney
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone:      (619) 557-7119 or
                (619) 557-7157

Attorneys for Respondents

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOPHEA HANG,<br><br>        Petitioner,<br><br>    v.<br><br>JOHN ASHCROFT, Attorney General of<br>the United States, IMMIGRATION and<br>NATURALIZATION SERVICE, and<br>ADELE FASANO, INS District Director<br>for the San Diego District,<br><br>        Respondents. | Case No. 02cv1978-J(AJB)<br><br><br>DECLARATION OF<br>VINCENT E. ARCHIBEQUE |

Vincent E. Archibeque states and declares as follows:

1.   I am an employee of the United States Department of Justice, Immigration and Naturalization Service (INS).  I currently serve in the capacity as a Detention and Deportation Officer, Office of Detention and Removal Operations at INS Headquarters in Washington, D.C.

2.   In my official capacity, I am familiar with the ongoing efforts of the United States Government to repatriate nationals of Cambodia.

EXHIBIT 1

3.   The Government of the United States and the Royal Government of Cambodia recently, on March 22, 2002, entered into a Memorandum of understanding regarding repatriation.

4.   Pursuant to this Memorandum of Understanding between the Governments of the United States and Cambodia, twenty-seven (27) of the twenty-eight (28) Cambodian nationals who have had travel documents issued have been successfully repatriated.

5.   Sophea Hang, (A 27 747 367), was one of eighty-one (81) deportable Cambodian citizens interviewed by a representative of the Cambodian Government from October 5th through October 12, 2002, pursuant to the Memorandum of Understanding.

6.   The interview is the last step in the process before the Cambodian Government issues travel documents to allow the repatriation of their nationals.   Therefore, I anticipate the repatriation of such recently interviewed Cambodian nationals, who are in detention, prior to that of any other Cambodian national.

7.   I am confident, as we continue to work with the Cambodian Government to strengthen the agreement in place, that travel documents issuance and repatriation will continue.

I declare that the foregoing is true and correct to the best of my knowledge under penalty of perjury.

Executed this $\underline{8^{th}}$ day of November, 2002, at Washington, D.C.

VINCENT E. ARCHIBEQUE
Immigration and Naturalization Service

**EXHIBIT 2**

BayArea●com
THE BAY AREA'S NEWS PAGE

| Our Local Channels | News | Business | Sports | Entertainment | Living | Classifie |

# San Jose Mercury News (CA)

October 19, 2002
**Section:** Front
**Edition:** Morning Final
**Page:** 10A

### INS DEPORTS 11 CAMBODIANS FOR FELONIES WHILE REFUGEES
*JESSIE MANGALIMAN, Mercury News*

**Eleven Cambodians** who came to the United States as refugees were **deported** this week in the latest round of deportations of Southeast Asian refugees convicted of felonies.

Among the group is an unidentified San Francisco resident and Kim Ho Ma, the 25-year-old convicted killer from Seattle who sued against "indefinite detentions" and won his case in the Supreme Court.
Leaders in the Bay Area's **Cambodian** community and legal advocates condemned the deportations, but INS officials said they would continue.

"Under the law, we will continue to seek the repatriation of other **Cambodian** nationals who have violated their right to remain in the U.S.," said Karen Kraushaar, an Immigration and Naturalization Service official.

Those **deported** Oct. 14 include residents from Atlanta, New Orleans, Detroit, Seattle, St. Paul, Minn., and Salt Lake City who were convicted of various crimes including drug trafficking, criminal sexual assault, theft and burglary, an INS official said.

In June, six **Cambodians** were **deported**. That group included an unidentified resident from Stockton.

A change in immigration laws in 1996 allowed the INS to **deport** non-citizens convicted of serious crimes. The INS has ordered about 1,400 **Cambodians deported.**

But because the United States did not have diplomatic relations with Cambodia, those ruled deportable could not be returned until an agreement was reached with Cambodia in May.

As a result, thousands of resident immigrants like Kim Ho Ma were detained indefinitely. Ma, who fled the Khmer Rouge regime when he was 2, sued the INS. Convicted of manslaughter in connection with a 1995 gang slaying, he served two years of a three-year sentence. He spent another year in INS detention.

"It pained him a lot, that he's created a lot of pain for the people he's leaving behind," said Jay Stansell, the Seattle public defender who represented Ma in the Supreme Court case.

Most of the refugees scheduled to be **deported** arrived in the United States in the 1980s as young children, victims of the brutal Khmer Rouge, under whose rule about 1 million **Cambodians** were killed.

"This is double punishment," said Loan Dao, a member of a Bay Area group fighting the deportations.

Copyright (c) 2002 San Jose Mercury News

EXHIBIT 2

**EXHIBIT 3**

FILED

02 JUL -9 PM 1:58

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

CALENDAR:
DOCKETS
SECY
ATTY

*Petition Denied*

*A#28-058-429*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIRMAY GEBREMARIAM, | CASE NO. 02cv0214-H(AJB) |
| Petitioner, | **Order Denying Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241** |
| vs. | |
| JOHN ASHCROFT, Attorney General, IMMIGRATION & NATURALIZATION SERVICE, ADELE FASANO, INS District Director for San Diego District, | |
| Respondents. | |

On February 4, 2002, Petitioner Girmay Gebremariam ("Petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner challenges his custody by the Immigration and Naturalization Services ("INS") alleging that he has been indefinitely detained in violation of 8 U.S.C. § 1231(a)(6). On April 3, 2002, the Court denied Petitioner's request for appointment of counsel. A return to the petition was filed by Respondent on May 3, 2002. Petitioner filed a traverse on May 31, 2002. In his traverse, Petitioner filed a renewed request for appointment of counsel.

## Background

On October 24, 1990, Petitioner lawfully entered the United States as a refugee from Ethiopia with his mother and siblings. He became a permanent resident on November 12, 1991. On October 11, 2000, Petitioner was convicted of possession of marijuana for sale, selling marijuana and conspiracy to commit a crime in state court. As a result, the INS ordered Petitioner removed from the

10

02cv214

EXHIBIT 3

1   United States on June 14, 2001. Petitioner filed an appealed with the Board of Immigration Appeals

2   contesting the decision; however, on June 16, 2001, Petitioner withdrew the appeal and requested to

3   be removed as soon as possible. The removal order became final on June 14, 2001 and he has been

4   held in INS custody since November 2, 2000.

5                                          **Discussion**

6          Petitioner contends that his detention violates 8 U.S.C. § 1231(a)(6) under the United States

7   Supreme Court decision in <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001) which held that the INS must

8   release an alien from custody if there is not a "significant likelihood of removal in the reasonably

9   foreseeable future." <u>Id.</u> at 701. Respondents contend that Petitioner has willfully failed to cooperate

10  in securing necessary repatriation documents and has failed to demonstrate there is not "a significant

11  likelihood of removal in the reasonably foreseeable future." <u>See id.</u>

12         Generally, when an alien is subject to a removal order, the alien must be removed within ninety

13  days after the order of removal becomes administratively final. 8 U.S.C. § 1231(a)(1). However, an

14  alien ordered removed for certain crimes can be held beyond the ninety day period. 8 U.S.C. §

15  1231(a)(6).

16         In <u>Zadvydas</u>, the United States Supreme Court concluded that "once removal is no longer

17  reasonably foreseeable, continued detention is no longer authorized by statute." <u>Id.</u> at 699. The Court

18  held that the Attorney General may presumptively detain an alien subject to a final removal order for

19  a period of six months. <u>Id.</u> at 701. However, after the six month period, the alien must provide good

20  reason demonstrating that "there is no significant likelihood of removal in the reasonably foreseeable

21  future." <u>Id.</u> Once the alien has met his burden, the government must respond with sufficient evidence

22  to rebut that showing. <u>Id.</u> The Court further stated that "[t]his 6-month presumption . . . does not

23  mean that every alien not removed must be released after six months. To the contrary, an alien may

24  be held in confinement until it has been determined that there is no significant likelihood of removal

25  in the reasonably foreseeable future." <u>Id.</u>

26         Here, the presumptive six month period has passed. Petitioner contends that the Ethiopian

27  government has not been responsive to his requests for travel documents. However, Respondents

28  demonstrate that Petitioner has declined to cooperate with INS agents to complete the necessary

1  paperwork to obtain the required travel documents.

2       On December 7, 2001, the San Diego INS District Office issued a Decision to Continue

3  Detention. (Return, Ex. C.) The INS concluded that Petitioner is perceived as being a threat to the

4  community, that there is a significant risk that he will abscond or fail to comply with conditions of

5  release and that he is perceived to have willfully failed to assist the INS in making a meaningful

6  application for a travel document. (Id.) On January 7, 2002, INS Headquarters in Washington, D.C.

7  also issued a Decision to Continue Detention. (Return, Ex. B.) In the decision, the INS concluded that

8  Petitioner has impeded the process by making contradictory remarks regarding his place of birth,

9  native language, place of birth of his father and refuses to complete the application for a travel

10  document. (Id.) In his papers, Petitioner does not explain the contradictory statements he has provided

11  regarding his place of birth and native language.

12       The INS has been able to carry out removal of Ethiopian nationals. (Return, Ex. B.) The INS

13  states that the "Government of Ethiopia historically takes an extensive time to issue travel document,

14  as a result of all applications being investigated in Ethiopia to verify identify and nationality, based

15  on materials that the applicant has provided. Only after that investigation has been completed does

16  the Government of Ethiopia request the INS to schedule a telephonic interview with the inmate. The

17  Government of Ethiopia has a history of issuing return travel documents to citizens and national who

18  render a valid application." (Id., Ex. C.) The INS further stated that "[h]eadquarters INS is at this time

19  actively pursuing issuance of a travel document, and no negative statements have been provided by

20  the Government of Ethiopia to state that a travel document will not be issued. Possible pressure will

21  be solicited of the Department of State to be brought against the Government of Ethiopia in the event

22  of failure to issue without cause." (Id.)

23       It appears that recent efforts have been made to obtain travel documents for Petitioner. On

24  April 25, 2002, the INS submitted a new application packet. (Return, Ex. D.) On May 7, 2002, a

25  telephonic interview was held with an Ethiopian Embassy official, an INS Deportation Officer,

26  Petitioner, and Jason Ser, an attorney at Federal Defenders, Inc. (Traverse, Ex. 11.)

27       Unlike the Petitioners in Zadvydas where there was no significant likelihood of removal in the

28  reasonably foreseeable future, the Government of Ethiopia has previously issued travel documents,

1   has begun to process Petitioner's application and has never stated that it will not issue a travel

2   document to Petitioner. The Government of Ethiopia has granted travel documents but has been slow

3   in issuing them. (Return, Ex. B.)

4        Based on the documents provided, the INS has been actively trying to obtain travel documents

5   for Petitioner and has been closely monitoring its development. However, it appears that the

6   discrepancies in Petitioner's statements made under oath before the INS have thwarted attempts to

7   obtain travel documents from the Government of Ethiopia. Petitioner cannot hinder the process to

8   obtain travel documents and argue that "there is no significant likelihood of removal in the reasonably

9   foreseeable future." See Zadvydas, 533 U.S. at 701. Therefore, the Court concludes that Petitioner

10   has failed to meet his burden.

11                        **Conclusion**

12        Based on the foregoing, the Court DENIES the Petition for Writ of Habeas Corpus pursuant

13   to 28 U.S.C. § 2241. The Court DENIES Petitioner's renewed request for appointment of counsel as

14   MOOT.

15   IT IS SO ORDERED.

16   Dated: ___7-8-02___

17

18                                 MARILYN L. HUFF, Chief Judge
                                  UNITED STATES DISTRICT COURT

19

20

21   COPIES TO:

22

23   Girmay Gebremariam
    A28-058-427
    San Diego Detention Center

24   Po Box 439049
    San Ysidro, CA 92143-9049

25

26   U.S. Attorney
    Southern District of California
    880 Front Street, Suite 6253

27   San Diego, CA 92101

28

- 4 -

02cv214

**EXHIBIT 4**



**U.S. Department of Justice**
Immigration and Naturalization Service

HQPDU
*Washington, DC 20536*

A27 747 367

Sophea HANG
C/o CCA
446 Alta Rd. #5400
P.O. Box 439049
San Diego, CA. 92143

## Decision to Continue Detention

This letter is to inform you that your custody status has been reviewed and it has been determined that you will not be released from the custody of the Immigration and Naturalization Service (INS) at this time. This decision has been made based on a review of your file and/or your personal interview and any consideration of the information submitted to INS' reviewing officials in support of your application for release.

You are a citizen of Cambodia. You were admitted to the United States as a refugee on Dec. 18, 1985 and subsequently adjusted your status to that of a lawful permanent resident. You have been convicted of assault with a deadly weapon, discharging a firearm in a negligent manner and vehicle theft. In Feb. 2002, you were ordered removed from the country and no appeal was filed in your case.

Title 8 CFR 241.4(e) enumerates the criteria for the release of an alien after having received a final order of removal. Among the criteria listed are: that travel documents are not available; presently non-violent; likely to remain non-violent; the person does not pose a threat and do not pose a flight risk.

Removals of Cambodian citizens have resumed with increasing frequency. There is a strong possibility that a travel document will be available for your removal in the reasonably foreseeable future. Your criminal record is violent in nature and there is nothing in your file that shows that you would remain non-violent and not pose a threat to the community.

The INS will conduct another review of your custody status within one year of the date of this notice. It is in your best interest to maintain proper behavior while awaiting this review. If you have any questions please contact your case officer.

You may submit evidence to the contrary. You may send this evidence to the Headquarters Post Order Unit (HQPDU), 801 I St, NW, Washington, DC 20536, Room 800.

Signature of HQPDU Director/Designated Representative

AUG  3 2002
Date

EXHIBIT 4

TOTAL P.02