USDC SCAN INDEX SHEET










KAJ     12/16/02    15:01
3:02-CV-01978   HANG V. ASHCROFT
*10*
*O.*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOPHEA K. HANG,<br><br>                Petitioner,<br><br>v.<br><br>JOHN ASHCROFT, ET AL.<br><br>                Respondents. | CASE NO. 02cv1978-J (AJB)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241 WITHOUT PREJUDICE** |

This matter comes before the court on petitioner Sophea Hang's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner challenges his custody by the Immigration and Naturalization Services ("INS") alleging he has been indefinitely detained in violation of 8 U.S.C. § 1231(a)(6) and seeks to be released from custody under the conditions of supervision set out in 8 U.S.C. § 1231(a)(3). On November 1, 2002, the court granted petitioner's request for appointment of counsel. On November 14, 2002, Respondent filed a return to the petition. On November 22, 2002, Petitioner filed a traverse and exhibits. The Court has reviewed the papers submitted and determined that the issue presented is appropriate for decision without oral argument. *See* Local Rule 7.1(d)(1). For the reasons set forth below, the petition is DENIED without prejudice.

### *Background*

On December 18, 1985, petitioner, a citizen of Cambodia, born in a Thai refugee camp, lawfully entered the United States as a refugee. (Traverse at 1:19,22). On October 27, 1987, he

adjusted to permanent resident status. (*Id.* at 1:21). On October 16, 2002, petitioner was convicted in San Diego Superior Court for assault with a deadly weapon, not a firearm, likely to cause great bodily injury, in violation of Cal. Penal Code § 245A. (*Id.*, Ex. 1). On December 7, 1999, he was convicted in San Diego Superior Court for willfully discharging a firearm in a negligent manner in violation of Cal. Penal Code § 246.3 and vehicle theft in violation of Cal. Veh. Code § 18051A. (*Id.*). Consequently, petitioner was ordered removed on February 28, 2002. (*Id.*). Petitioner waived appeal of the immigration judge's order of removal, which became administratively final on February 28, 2002. (*Id.*). Petitioner has been in INS custody since March 19, 2001. (Ser Decl. ¶15).

Petitioner originally filed an application for a travel document on March 5, 2002, which was denied on March 6, 2002. (Traverse, Exs. 3, 4). The Cambodian government denied the application because no repatriation agreement had yet been signed. (*Id.*, Ex. 4). On March 22, 2002, the United States and the government of Cambodia signed a "Memorandum Between the Government of the United States and the Royal Government of Cambodia for the Establishment and Operation of a United States-Cambodia Joint Commission on Repatriation" (hereinafter "Memorandum"). (Traverse, Ex. 7). The Memorandum provides procedures for the repatriation of each other's nationals to their home state. (*Id.*). Each repatriation is to be considered on a case-by-case basis. (*Id.*). On April 4, 2002, petitioner filed a new application for a travel document from the government of Cambodia. (Traverse at 2:1-2). On or around April 20, 2002, the government of Cambodia began to review travel document applications for Cambodian citizens in INS custody. (Ser Decl. Ex. 6). Since the signing of the Memorandum, twenty-seven (27) of the twenty-eight (28) Cambodian nationals who have received travel documents have been repatriated. (Ret., Ex. 1, ¶4). In early October 2002, a Cambodian official interviewed petitioner, as well as eighty (80) other Cambodian nationals subject to removal. (Ret. at 7:20-22; Ret., Ex. 1, ¶5). An interview is the last step in the process before the government of Cambodia issues travel documents. (Ret., Ex. 1, ¶6). The Cambodian government has not yet issued a travel document for petitioner. (Traverse at 4:25). The INS expects travel documents and repatriation of these recently interviewed Cambodian nationals to be forthcoming. (Traverse, Ex. 1, ¶6-7).

*Discussion*

Petitioner contends that his detention violates 8 U.S.C. § 1231(a)(6) under the United States Supreme Court decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001), which held that the INS must release an alien from custody if there is not a "significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701.

Generally, when an alien is subject to a removal order, the alien must be removed within ninety days after the order of removal becomes administratively final. 8 U.S.C. § 1231(a)(1). However, an alien ordered removed for certain crimes can be held beyond the ninety day period. 8 U.S.C. § 1231(a)(6). The parties do not dispute that 8 U.S.C. § 1231(a)(6) applies to petitioner.

In *Zadvydas*, the United States Supreme Court concluded that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The Court held that the Attorney General may presumptively detain an alien subject to a final removal order for a period of six months. *Id.* at 701. However, after the six month period, the alien must provide good reason demonstrating that "there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Once the alien has met his burden, the government must respond with sufficient evidence to rebut that showing. *Id.* The Court further stated that "[t]his 6-month presumption . . . does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

After remand by the United States Supreme Court in *Zadvydas*, the Ninth Circuit, in *Ma v. Ashcroft*, involving a Cambodian national, affirmed the district court's decision denying the petition for writ of habeas corpus because there was no reasonable likelihood that petitioner would be removed in the reasonably foreseeable future. *Ma v. Ashcroft*, 257 F.3d 1095, 1116 (9th Cir. 2001). The court based its decision on the fact there was no repatriation agreement and "there was an insufficient showing that future negotiations were likely to lead to a repatriation agreement within the reasonably foreseeable future." *Id.* at 1099.

Here, the presumptive six month period has passed. Petitioner contends that his April 4, 2002 request for a travel document "has gone unanswered" (Compl. at 2:23-24), "his country of

origin will not accept him" (Req. for Appt. of Counsel at 3:20), and "there is no significant likelihood of removal." (Compl. at 4:12).

Petitioner also asserts that the Cambodian government has denied travel documents to other similarly situated Cambodian detainees. Petitioner provides evidence of documents from his own removal case and those of similarly situated Cambodian detainees. (Traverse, Exs. 1-6, 8-12, 13, 16-26). Petitioner argues that these documents support his position that his removal is not significantly likely because the government of Cambodia failed to respond or denied requests for travel documents to other detainees. Additionally, petitioner provides the declaration of a similarly situated Cambodian refugee, who stated that when he was interviewed by an official from the Cambodian government, the official informed the declarant that he would not likely receive a travel document due to his background, which includes his birth in Thailand. (Traverse, Ex. 12). However, this statement is hearsay under Fed. R. Evid. 802.

The fact that not all Cambodian nationals will be repatriated is not the standard set forth in *Zadvydas*. It appears the Court in *Zadvydas* contemplated that each case be considered independently to determine whether there is a significant likelihood of removal in the reasonably foreseeable future of petitioner and not all Cambodian nationals. *See Zadvydas*, 533 U.S. at 699-700 ("habeas court must ask whether the detention *in question* exceeds a period reasonably necessary to secure removal" (emphasis added)).

Respondents assert that a number of Cambodian nationals have already been removed to Cambodia since the signing of the Memorandum. In fact, twenty-seven of twenty-eight Cambodian nationals issued travel documents have been repatriated. Petitioner was one of eighty-one deportable Cambodian citizens interviewed in early October pursuant to the Memorandum. The interview is the final step before the Cambodian government issues travel documents to allow repatriation.

In this case, the repatriation process has been proceeding. Unlike the facts in *Ma*, there is now an agreement between the United States and Cambodia regarding repatriation signed on March 22, 2002. The INS has been able to carry out removal of Cambodian nationals since the Memorandum has been signed. The Cambodian government has not stated that it will not issue a

travel document to Petitioner. Petitioner's application for travel documents was not rejected and the Cambodian government has proceeded to process his application. Petitioner had an interview in early October 2002, the last step before the Cambodian government issues travel documents. Petitioner is now awaiting a decision regarding whether he will be issued travel documents.

Accordingly, based on the above, the court concludes that petitioner has not met his burden of showing good reason why there is no significant likelihood of removal in the reasonably foreseeable future.

## *Conclusion*

For the reasons set forth above, the court **DENIES** without prejudice the petition for writ of habeas corpus subject to renewal if the Government of Cambodia fails to respond or denies repatriation. Respondents should provide the court with an update of the issuance of the travel document within 45 days of the date this order is filed. If the Government of Cambodia has not responded or denied issuance of the travel documents, petitioner may renew his petition for writ of habeas corpus.

**IT IS SO ORDERED.**

DATED: 12-11-02

NAPOLEON A. JONES, JR.
United States District Judge

cc: All Parties